May it please the court. Good morning. I have the honor of representing Brothers and Sisters in Christ LLC, a very small company. And I also have the pleasure of telling the court that I have an easy case for this court to decide. Here's what happened. Zazzle is an internet website that does lots of business in Missouri. They admitted on page 12 of their brief to this court. Therefore, under the Ford Motor case, perhaps alone, I would have specific personal jurisdiction. But further, Zazzle sent and sold a trademark-infringing good into Missouri, which under black-letter law, also alone, grants the district court that heard the case, or didn't, but that dismissed the case, specific personal jurisdiction. Now, the district court disregarded both those bits of evidence. Number one, the district court said it really doesn't matter that Zazzle is doing business in Missouri because Zazzle is not targeting Missouri. No, no, no. I don't have to show targeting. I have to show availing. The fact that Zazzle sells nationwide, but doesn't target Missouri, but just happens to do lots of business here, equals availing themselves of doing business in Missouri, of the privileges of doing business in Missouri, which is one of the most… Counsel, are you contending that that qualifies as personal jurisdiction under the general variety or under the specific variety? You're saying that's enough for specific jurisdiction? Under the Ford Motor case, yes, but not under some of the other tests, but whatever test you use, if I can show lots of business being done in Zazzle, by Zazzle in Missouri, plus the sale and shipping into Missouri of a trademark-infringing good, I've got it. I'll go through those tests a little later, but those two items are so important, and they were both disregarded by the district court. The district court said, well, Zazzle doesn't target, but the undisputed fact is they avail, and second, the sale into Missouri of the trademark-infringing good was to someone affiliated with Zazzle, and the district court said, I'm not going to consider it because of that. As this court knows, there are two and a half courts of appeal that back me up on this on point. There's the Second Circuit that says a trademark-infringing good sold into a state to someone affiliated with the plaintiff grants specific personal jurisdiction. That's the second and the 11th, and back in 1991, this very 8th Circuit, I don't believe anyone I'm looking at here was there at the time, but perhaps it's the Dakota Industries case. That case did not involve the internet. It involved a trademark-infringing good. I think it was in South Dakota, and the president of the plaintiff bought the trademark-infringing good at a half-price sales store, and the district court still dismissed the case because of lack of personal jurisdiction, and the 8th Circuit reversed it, saying, and one of the bits of evidence was, well, there was a sale in the forum to the president of the plaintiff. Now, as you know, intellectual property is essentially policed by the property owner. The property owner can't call anybody. I can't call the highway patrol and say Zazzle's infringing on my trademark, so the property owner has to investigate, develop, and essentially prosecute the case. That is why the two-and-a-half courts of appeal that have considered this have gone my way on it, second and 11th. The 8th's decision, while it's instructive, wasn't on an internet case, and there's numerous district courts which I cite also allow sales to someone affiliated with the plaintiff to provide one of the cornerstones of specific personal jurisdiction in the case. So, in this case, the district court disregarded the sale into Missouri. The district court disregarded the lots of business done by Zazzle in Missouri. I mean, I agree, if you throw that out, I don't have anything, but it shouldn't have been thrown out. It's very powerful, and that's why this is such an easy case for the court. Zazzle availed itself of doing business in Missouri. Zazzle sent a trademark-infringing good into Missouri. Period. End of story in terms of personal jurisdiction. As you know, this court considers personal jurisdiction challenges de novo. What I have to show is prima facie evidence, and those two things are very powerful. If you look at the 8th Circuit case, Whaley versus, I'm going to say Icebag, I'm not sure. It's a recent 8th Circuit case on personal jurisdiction. As you know, trademark infringement is considered a tort, and if you use the Calder case, we've got the fact that the trademark infringement was sent here and caused harm here. My client is located here in St. Louis County. Second. Counsel, you've talked a lot about the business that Zazzle admits that it does in Missouri, but doesn't it have to be suit-related conduct? In other words, we're talking here about an infringement with the shirt. Isn't that a distinction that we have to recognize when we're looking at personal jurisdiction? The short answer is yes, but I'll point out the Ford Motor case from the U.S. Supreme Court seems to put that in doubt, but I win either way because I have the trademark-infringing sale into Missouri. So that provides the connection between the context and my cause of action, and the idea that Zazzle can do a lot of business here and send a trademark-infringing good here that's purchased means that Zazzle can't be surprised to be sued here in Missouri when that's the undisputed facts. So Zazzle, under your theory, could be sued anywhere? Well, if you read the Ford Motor case strictly, the answer would be yes. Your position, then, is that the current state of federal law is that a website that is on the World Wide Web that someone can initiate a lawsuit simply by purchasing a good off of a website anywhere in the world, and you have sufficient contacts for due process purposes in the location of the plaintiff? Under black-letter law on trademark infringement, yes, but luckily for me, I have that plus lots of business being done in Missouri. So Zazzle, combining those two things together, which are undisputed, Zazzle cannot be surprised by being sued in Missouri if they do lots of business here and they trademark infringement here. Do I believe that I could get along with just one of those two? Yes, but I don't have to rely on just one. I have two. Well, to push you a little bit, I think what you just misquestioned is I understand what you're saying. You've got it here, but your argument and your presentation of the issue is that I can sue them anywhere. And this is a Zazzle does, I'm assuming, does business such that anybody sitting at a computer could engage in business with them? Respectfully, no, ma'am. That is not my argument. My argument is if Zazzle does a lot of business in a state, plus Zazzle sends in and sells a trademark infringing good in that state, they can be sued there for trademark infringement because they have lots of contacts. Plus, one of the contacts is directly tied to the cause of action being even if that single contact, that single contact with Missouri was orchestrated by the plaintiff. Yes, but it's not a single contact in this case because we also have a single contact that's infringing. So you're saying the fact that they do business generally with selling goods of other kinds that are non-infringing, that you can couple that with one instance of orchestrated infringement to create personal jurisdiction for the infringing conduct? Absolutely. Under Ford Motor, it may be enough just to have all the sales, but under trademark law, if they do a single infringing sale in this case, plus having lots of business, yes. And if you look at the 11th Circuit case, Louis Vuitton v. Mosseri, and the 2nd Circuit case, Chloe, my favorite, Chloe v. Queen Bee of Beverly Hills, both those cases are on point and say a single infringing sale into Missouri that's made to someone affiliated with the plaintiff gets you personal jurisdiction. Well, the 7th Circuit is the contrary, right? Yeah, there's a 7th Circuit case that is to the contrary of me. Yes, sir. Proceed. And Louis Vuitton, go ahead, finish your answer. No, no, ma'am. I have a feeling that you have the right of way. Well, in Louis Vuitton, I thought that the facts showed, or at least the court concluded, that there was sort of a systematic reaching into, I think it was Florida, related to the infringing product. So it's not exactly what you've got here because you've got the distinction that you were discussing with Chief Judd Smith about one infringing sale and then just a bunch of other conduct, which amounts to sales into Missouri. Yes, and in the Louis Vuitton case, I believe there is a sale made. I think it's with a private eye working for the plaintiff. And I think I could have this reverse, but I think Chloe v. Queen Bee was with an associate to the law firm representing the plaintiff. So I see Judge Benton nodding. Maybe I got that right, or I might have them reversed. So my point is, we have a defendant who does a lot of business in Missouri who sent trademark infringing goods into Missouri, to someone who happens to be the mother of one of the owners of Basic. And by the way, we were open about that from the beginning. I did not hide that under the basket. And so those combinations satisfy the tests for specific personal jurisdiction, whether it's the Calder test, the Burlington test, or the more specific trademark infringing tests, which seem to say a single infringing good would do it because it's a tort. So if someone commits a tort in Missouri, if they have no other connections, you can sue them in Missouri. And that's how trademark infringement is kind of looked at by the courts. And getting back to the most seminal case, the 1991 8th Circuit case, Dakota Industries, one of the pieces of evidence supporting personal jurisdiction was the fact that the president of the plaintiff purchased the trademark infringing good in the forum. Now, it was at a half price store. It was not on the Internet. I guess there was the Internet in 1991. I can't remember that far back. So because of that, the district court erred in disregarding the infringing sale into Missouri, and the district court erred in disregarding the volume of business that Zazzle does with Missouri. And the combination clearly gives you specific personal jurisdiction in Missouri. Now, I want to reserve some of my time from rebuttal, and I could take you through the various tests. You're within your rebuttal time now, so you can proceed, or you can reserve it. I'm going to reserve it, Your Honor, unless there's any other questions. Thank you, sir. Thank you, Mr. Schultz. Mr. Victor? Good morning, Your Honors. Excuse me, Mr. G, I'm sorry. I was looking at your name up there transposed. Mr. G, please. Not a bad. I'll happily go by Mr. Victor as well. This issue, Your Honor, involves the application of basic principles of personal jurisdiction that this court has established, especially for the Internet. Most recently, I was thinking Johnson, Your Honor. I think the idea that operating a website, even an interactive one, is sufficient to confer personal jurisdiction by itself. That was rejected by Your Honor's opinion, and Johnson decided in 2010. Where the court said there, Your Honor, was that the Eighth Circuit follows Zippo. Under Zippo, the mere operation of a website nationally is not sufficient because that would constitute basically someone being hailed into everywhere. And the court says you have to look to whether or not it actually resulted in business in the particular forum state, or if there's any other kind of purposeful targeting or direction towards the forum state beyond the mere operation of the website. In this instance, Your Honor, the district court correctly found there's no other such evidence except for one contact. And that one instance of business that is at issue here in terms of the infringement was one that was orchestrated, which the other side readily admits, to confer jurisdiction. The complaint itself literally attaches the shipping label and gives the name of the customer in their allegations of jurisdiction in the case. So this case presents, Your Honor, the square question of is a single sale, a single contact that's suit-related, is that sufficient if it's orchestrated by the plaintiff? Now, they say there are two and a half circuits that support them. I submit, Your Honor, that none of them support them. The Dakota case, Your Honor, in this circuit, as he says, had one piece of evidence being that the sale was to a president, in addition to a lot of other evidence. That circuit did not answer the question of whether or not a single plaintiff-associated sale would be sufficient. The issue didn't come up because the record was filled with a lot of different instances that concern purposeful availment. The Louis Vuitton case, Your Honor, the 11th circuit, also did not address the issue. There, the court relied on the fact that there were multiple infringing sales to the forum, only one of which was to an associate of the plaintiff. So no discussion there, legal or otherwise, Your Honor, of the impact of it being one transaction being affiliated with the plaintiff. The closest, Your Honor, that any circuit court has come to it is the Second Circuit in Chloe. But there, Your Honor, the Second Circuit specifically said, we do not reach the question of whether or not a single-affiliated sale is sufficient to confirm personal jurisdiction. In fact, in the footnote, Your Honor, the court specifically lays out the potential problems and all the courts that say that that's not enough. And they do not touch the issue. Why not? Because in that case, they say- Well, you're right. Let me interrupt you. You're right about, I'm looking at the we hold sentence of Chloe. It does say, comma, combined with the employer's extensive business activity involving New York. Correct. Now, didn't your opposing counsel tell us you had extensive business activity in Missouri? Yeah. What's interesting about Chloe, Your Honor- No, no, no. I need a yes or no or something like that. Yeah, we do. We operate a website, but it's not suit-related. The reason it matters is Chloe's decided pre-Bristol-Myers, pre-Squibb. Under the old approach, a lot of circuits, 9th Circuit, 2nd Circuit, looked at a bunch of contacts, whether suit-related or not. And in Chloe, it was just selling goods that were not related to the infringement, but the amount of sales in there, whether or not it was reasonable, under the old approach, to confer specific personal jurisdiction. The Supreme Court put the kibosh on that in the Bristol-Myers case, Your Honor, in 2017, and basically said it has to have a nexus. Without a nexus, you can't look at these other activities, these other contacts that the 2nd Circuit said it was relying on in Chloe. So in the 2nd Circuit, the court said, I don't have to reach the issue of a single manufactured kind of contact because I have general business of selling other goods, other counterfeit goods. In fact, the 2nd Circuit even says, we hold that a single sale of a bag, even if it's not a counterfeit bag, gives rise to specific personal jurisdiction. That is no longer the law, Your Honor, after Bristol-Myers, where the Supreme Court says, nope, sorry, you don't do the sliding scale, specific jurisdiction can't collapse into general. You have to look at suit-related conduct. Now, suit-related conduct, that brings us squarely into Ford Motor's recent decision in 2021. Number one, Justice Kagan was very clear that nexus is the law. They did not go back on Bristol-Myers. Moreover, the court said, yes, the step it took was it says it doesn't have to causally be connected. It doesn't have to arise out of, related to is enough. But in a footnote, in the Ford Motor case, Your Honor, the Supreme Court, Justice Kagan specifically says, because she was answering the dissent, answering the people going against the majority opinion. This does not open the door the way the plaintiff wants to in this case. She specifically said, we do not rely on sporadic contacts, isolated contacts, where there only may be one contact in order to anchor this related to concept. I think the current state of law under Ford Motor, Your Honor, is, yes, you can have one contact be enough if it arises out of that contact. But if you're going to try to argue that it's just related to the contact, that better be much more than just one isolated random contact. Ultimately, Your Honor, the circuit courts have really fully addressed this. The Second Circuit sidestepped it. But the district courts that have talked about this issue, the emerging consensus is a single manufactured contact is not enough for three reasons. And the irrationality that has emerged, all three, I think, are equally applicable here. The first one is this. If there's only a single contact, the courts have focused on the fact whether that contact truly represents purposeful availment and intentional conduct by the defendant. And what they've said is when it's manufactured or something where it's like basically, you know, sort of a created artificial contact, it more reflects the litigation contact of the plaintiff than it does purposeful availment by the defendant. This takes even greater foreshadowing given what the Supreme Court said in Walden v. Fiori. And this circuit has also repeated that in the new test, it must reflect contacts made by the, quote, defendants himself. Not just by the defendant, but the defendant himself. And the idea that a manufactured contact rises to the level when there's only one of conduct by the defendant themselves, I'll take out the gender in that context. The courts have questioned whether that should be sufficient under Walden in particular. The second rationale, Your Honor, is this. Because it has to be suit-related, it has to arise out of the contact. And in a trademark infringement suit, we cited numerous district court opinions, Your Honor, they've said, you can't say a sale done by the plaintiff or an associate who knew about the trademark infringement suit they were preparing for reflected any confusion. The idea that a trademark infringement claim, the touchstone of which is confusion, arises out of a manufactured contact is a little bit of a stretch too far in terms of the right to- Counsel, what about his argument, which is true, that the owner is always the one defending these? Owner must defend property, this is like your neighbor comes across your yard. Go ahead. No one is saying it's improper to hire an investigator or to take action to try to get the product, etc. The problem is you can't base jurisdiction in a forum on that sole contact. No court has ever said you can't go do this or investigate or get this. But if you're going to hail someone across the country into a state, you have to have more than that to base personal jurisdiction on. What about the black letter, and this is, I think, I had trouble following Mr. Schultz at first, but I think I know what he's referring to. The statement in Ford that when a corporation is continuously and deliberately exploiting the state's market, it must reasonably be anticipated being hauled into that state's court to defend on products causing injury there. Yes. Why doesn't that cover the case, that little sentence right there? I know Ford's mostly for you, but why doesn't that urge you? It doesn't because the court explained it in the context of the facts of Ford Motor. Don't forget, Ford Motor, the marketing in that case was of the product that was claimed to be defective. The only reason it didn't arise out of that sale was because the plaintiffs happened to have bought it in a different state. They were injured in that state. What Justice Kagan said is the nexus is close enough, even though it didn't arise out of a contact with the state, because they bought it in a different state. You are marketing that product in the state, and because you're marketing the specific product in question in that state, the Supreme Court, in a very split decision, but the Supreme Court held that you didn't have to have causal but-for connection. It didn't arise out of, but because it was related to, that was sufficient. But in the footnote, she says two things. Number one, the critics who say this opens the doors too far. It allows you to say, as long as you do a lot of business there, you can be hauled in. No, she says in the footnote, number one, we never based on sporadic, isolated contacts, and two, they're deliberately not covering the internet. They say we're refraining from covering the internet because that creates its own host of problems. In many ways, I think this is the test case that Justice Kagan was terrified of because it fed the criticism of the dissent. What she's trying to do is to say, I'm not going to strictly require causation, but I am going to require some still some nexus. And the cases have held, and the district court judge, your honor, does a canvassing of the district court opinions on this issue. Does a very careful balancing of, one, is it actually infringement itself? No. You can't be confused if you're the one who's the plaintiff. Number two, is it sufficiently related to? And I would say there's not a single case that says it is related to one isolated random contact when it's completely manufactured. None of the infringement claim in general arises out of that. The third one, your honor, the third rationale that has emerged is that the balance that's necessary to make sure this comports with due process, fair play, and reasonableness. Ultimately, it looks very different when we're talking about a manufactured contact. Not only is the nature of the contact suspect, because it's not clearly indicative of a defendant's free, voluntary choice. At the very least, it's not defendant himself, it's somewhat induced. But number two, it's only one contact. So in terms of this court's precedence, it's one sporadic contact that the court and Ford Voter again emphasize that plays an important role. But third, your honor, a state's interest in providing a forum for trademark infringement when there's actually been no indication of any confusion in the state. And the only instance even coming close to infringing is one that resulted in no confusion is at its lowest possible point. And compared to the federalism concerns that the court has, the Supreme Court has articulated in the recent personal jurisdiction, jurisdiction precedence, the balance just isn't the same. So we would submit, your honor, that there's no question there's no general jurisdiction, personal jurisdiction here. I know that that one quote that your honor's point is, I think it's from Burger King, ultimately, from the beginning, saying whether or not it's reasonable for it to be hailed in there. I think when the court lays out that long explanation of it, she acknowledges that Justice Kagan says it's a quote we often use. It's one of those quotes that can always sometimes be stretched a certain way or another. But if you look at it in the context of all of the Internet cases, look at this court's authorities in Johnson, look at the court opinions in terms of the full context. The argument is this. You don't want to make every website potentially subject to personal jurisdiction everywhere without something greater indicating a purposeful availment of that forum. Simply saying that there's a sale, that single sale that itself is not infringing, that itself is manufactured, shouldn't cross the line either. I won't think under the balance that that's sufficient. So I do think, your honor, there's a lot of movement, of course, in this area. The Supreme Court is being very active in this area. But I do think that the cases do sit together very nicely in terms of basic principle. There's not a single case they can cite to. Any circuit, first of all. But any case that says it's okay under the modern jurisprudence to call someone in because of a manufactured contact. Every case where the courts have disagreed has been based on a pre-Bristol Myers, pre-Ford Motor rubric where they just did the old way of adding up contacts like you would under general jurisdiction. The old approach. And the courts have rejected that. The Supreme Court has. Let me ask you a question. Does anybody else agree with the seven circuits approach? And I have an advanced tactical ordinance system as a case. Does anybody else agree with that besides the seventh circuit? Like I said, I don't think the circuits in general have even weighed in on this issue. Well, no, no, no. My question is a simple one. Anybody else you know of agree with this? My understanding is that most of the district courts that have weighed in on this issue, I don't remember the key sites of which ones cite the seventh circuit opinion. But there are many of them. And they're in our briefs. They're at least that all go the direction of once. I take that as I take that as no other circuit. And I realize it's it's also it's also pre the recent Supreme Court case. Yeah, no, I definitely agree, Your Honor, that this would be the first circuit to squarely address the issue, not sidestep it like the second circuit did. And it would also be the first circuit to do it under the modern rubric of Bristol Myers, suit related contacts. And certainly since Ford Motor, which was just decided last year. But I think especially if you read the caveats that Justice Kagan went to great lengths to put in Ford Motor, it's clear under the arising understander, it would not be enough. Right. And many district courts have said that. But under the related to which Ford Motor represents a little expansion of, it is clearly the worst possible case. She would not want that case to be the example of how the law has changed. She's very careful in that footnote to say to avoid precisely the application of it in this context. And if there are no other questions on her, we would submit. But we think the judge admittedly no circuit law on it. But the principles are pretty clear and the application by the district courts looking at how this specific issue is basically a consensus, Your Honor. The only one or two deviants are mostly in the context of pre-Bristol Myers saying that we just don't even care if it's related at all. So, but that, Your Honor, we would submit. Thank you. Thank you, Mr. G. Mr. Schultz, your rebuttal. Nita, unmute. As you heard, the defendants started talking about the underlying infringement claim, which does not come into this. We're not talking about the merits. We're talking about personal jurisdiction. Number two defendant argues. Number one, he says, well, all the business we do in Missouri, that doesn't have anything. That's not tied to this particular claim. And then when I say, well, you've got some contact with this particular claim, it was like, well, that's not much business. You see, you combine the two for specific personal jurisdiction, just like the court talked about in Ford, just like your test is from Whaley versus Esabag. The question is, is there a contact or contacts that have a connection to the cause of action? Yes. Undisputed. Are there a lot of business being done by Zazzle in Missouri, so it shouldn't be a surprise for them. They could be called in here. Yes. It is not necessary to sue Zazzle for trademark infringement that they do dozens of these. It's enough that they do a lot of business in Missouri and they sent in a trademark infringing good. And finally, I will point out that on page eight and nine of my reply brief, there are a host of district court cases supporting me saying it doesn't matter that the only purchase of the Chloe branded handbag was to an employee of plaintiff's counsel. The fact that intellectual property owners have to purchase these things to prosecute the case has been supported by, I don't know, at least half a dozen recent district court cases on page eight and nine of my reply brief. So the idea that I'm out there all by myself is incorrect. I have lots of business done by Zazzle. I have an infringing sale by Zazzle into Missouri. And when you commit a tort in Missouri, which is what trademark infringement is considered, you can get sued in Missouri. I have both. That's why this is an easy case for the court. I'm not relying on one or the other. I'm relying on both. And if someone came to Missouri and committed a tort, I could sue them here. If someone does a lot of business in Missouri and commits a tort here, I can sue them here. And the idea that Zazzle gets to do a ton of business everywhere, gets to infringe trademarks here and can go hide in California. No, there's no reason to treat trademark owners in the Eighth Circuit worse than they're treated in the 11th or the second. And the fact that Zazzle wants to get away with this because they're so big. I asked the court to counsel. It's not a matter of getting away. You're fighting over the forum, not over whether they're accountable for any wrong they've done. Well, you know, Judge, my client is very small. It'll be difficult to go to California. We shouldn't have to when they did it here. And I actually asked the district court, if you're inclined to dismiss me, send me to California. And the district court didn't. So which means I'll refile if I have to there, but I shouldn't because my client is a victim of trademark infringement here. And if we were in the Second Circuit or the 11th Circuit or the Eighth Circuit as of 1991, we'd be fine. And I am confident we'll be fine here because we have a lot of business being done and we have a trademark infringing good being sent and sold into here. And the courts that have considered it on page eight and nine of my reply brief all say it doesn't matter if an affiliate of the plaintiff brought the sale in. We didn't hold a gun to Zazzle's head. They wanted money. We gave them money. They sent the good in. So I respectfully ask the court to reverse the district court and remand the case for proceedings because the district court should have honored the trademark infringing sale into here and the district court should have considered the fact that Zazzle admits it does lots of business here. Thank you, Mr. Schultz. Thank you. Thank you. Also, Mr. G, the court appreciates both councils presentations to the court and your responses to our inquiries. We will continue to study the case and render decisions promptly as possible.